**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **OPTIS WIRELESS TECHNOLOGY, LLC, OPTIS CELLULAR TECHNOLOGY, LLC, UNWIRED PLANET, LLC, UNWIRED PLANET INTERNATIONAL LIMITED, AND PANOPTIS PATENT MANAGEMENT, LLC,**<br><br>　　　**Plaintiffs,**<br><br>　　**v.**<br><br>**FORD MOTOR COMPANY,**<br><br>　　　**Defendant.** | **Civil Action No. 2:22-cv-133**<br><br><br>**JURY TRIAL** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Optis Wireless Technology, LLC, Optis Cellular Technology, LLC, Unwired Planet, LLC, Unwired Planet International Limited, and PanOptis Patent Management, LLC (collectively and/or individually referred to as the "Plaintiff(s)" herein) file this Complaint against Ford Motor Company (referred to as the "Defendant" or "Ford" herein), and allege as follows:

## I.　　NATURE OF THE ACTION

1.　　This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. For example, Ford has infringed and continues to infringe, contribute to the infringement of, and/or actively induce others to infringe U.S. Patent Nos. 8,149,727 ("the '727 patent"), 8, 199,792 ("the '792 patent"), 8,223,863 ("the '863 patent"), 8,254,335 ("the '335 patent"), and 8,320,319 ("the '319 patent") (collectively, the "Patents-in-Suit"). The Patents-in-Suit are valid and enforceable, and Plaintiffs believe that they are necessary to practice the 3GPP LTE cellular technical specifications. Ford is not currently licensed to practice the Patents-in-Suit.

2.      For several years dating back to 2017, Plaintiffs themselves and also as part of a licensing pool through Avanci LCC ("Avanci") have attempted to negotiate with Ford to reach an agreement for a FRAND license to Plaintiffs' cellular patent portfolios. However, Ford has declined to date to take a license. In contrast to Ford, several other automobile manufacturers have taken a license.

3.      The negotiations have thus been unsuccessful because Ford is not acting in good faith and is frustrating performance of Plaintiffs' FRAND commitment. Therefore, Plaintiffs file this Complaint seeking a judgment of and relief for Defendant's conduct.

## II.     PARTIES

4.      Plaintiff Optis Wireless Technology, LLC ("Optis Wireless") is a limited liability company organized and existing under the laws of the State of Delaware, and maintains its principal place of business at 5801 Tennyson Parkway, Suite 430, Plano, Texas 75024.

5.      Plaintiff Optis Cellular Technology, LLC ("Optis Cellular") is a limited liability company organized and existing under the laws of the State of Delaware, and maintains its principal place of business at 5801 Tennyson Parkway, Suite 430, Plano, Texas 75024.

6.      Plaintiff Unwired Planet, LLC ("Unwired Planet") is a limited liability company organized and existing under the laws of the State of Nevada, and maintains its principal place of business at 5801 Tennyson Parkway, Suite 430, Plano, Texas 75024.

7.      Plaintiff Unwired Planet International Limited ("UPIL") is a limited liability company organized and existing under the laws of Ireland, and maintains its principal place of business at Unit 32, Hyde Bldg., The Park, Carrickmines, Dublin 18, Ireland.

8.      Plaintiff PanOptis Patent Management, LLC ("PPM") is a limited liability company organized and existing under the laws of the State of Delaware, and maintains its principal place of business at 5801 Tennyson Parkway, Suite 430, Plano, Texas 75024. PPM is responsible for

managing the licensing of the patents owned by Optis Wireless, Optis Cellular, Unwired Planet, and UPIL. Plaintiffs have also authorized Avanci to license Plaintiffs' patents on FRAND terms as part of a patent pool.

9.     On information and belief, Defendant Ford Motor Company is a corporation organized under the laws of Delaware, with a principal place of business at One American Road, Dearborn, Michigan.

10.     Optis Wireless is the assignee of numerous patents, many originally assigned to Panasonic Corporation ("Panasonic") and many others originally assigned to Telefonaktiebolaget LM Ericsson ("Ericsson"), that are, and remain, essential (as that term is defined by ETSI) to practicing the LTE Standard. Optis Wireless is the owner and assignee of the Patents in Suit.

11.     Optis Cellular is the assignee of numerous patents, many originally assigned to LG Electronics Inc. ("LG") and many others originally assigned to Ericsson, that are, and remain, essential (as that term is defined by ETSI) to practicing the LTE Standard.

12.     Unwired Planet is the assignee of numerous patents, many originally assigned to Ericsson that are, and remain, essential (as that term is defined by ETSI) to practicing the LTE Standard.

13.     UPIL is the assignee of numerous patents, many originally assigned to Samsung Electronics Co., Ltd. ("Samsung") that are, and remain, essential (as that term is defined by ETSI) to practicing the LTE Standard.

14.     Each of the Patents-in-Suit has been declared to ETSI by its original assignee, and reaffirmed by Optis Wireless, as essential to practicing the 3GPP LTE technical specifications.

15.     Ericsson, Panasonic, Samsung and LG were and continue to be active participants in 3GPP. They have each made numerous contributions to the 3GPP technical specifications,

including in the radio access technology. The Patents-in-Suit are examples of the significant investment these companies made in research and development for cellular technology.

16. Ericsson, Panasonic, Samsung, and LG have each had a history of making FRAND commitments to ETSI and other telecommunication standards organizations, including through both general declarations and/or specific declarations. Plaintiffs have reaffirmed these FRAND commitments as to the patents assigned to them from these companies.

## III.   JURISDICTION AND VENUE

17. Within the United States, this Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

18. The amount in controversy exceeds $75,000.

19. Ford designs, manufactures, uses, imports into/exports out of the United States, sells, and/or offers for sale in the United States vehicles with 4G (LTE) cellular communication capability. Ford vehicles are marketed, offered for sale, and/or sold throughout the United States, including within this District.

20. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 (b) and (c) and 1400(b), because Ford is subject to personal jurisdiction in this District, has committed acts of infringement in this District, and has a regular and established place of business in this District.

21. This Court has personal jurisdiction over Ford. Ford has continuous and systematic business contacts with the State of Texas. Ford, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), conducts business extensively throughout Texas, by shipping, distributing, offering for sale, selling, and advertising (including the provision of interactive web pages) vehicles and services in the State of Texas and the Eastern District of Texas.

22. Ford, directly and through subsidiaries or intermediaries (including distributors, retailers, and others), has purposefully and voluntarily placed infringing vehicles and services into

this District and into the stream of commerce with the intention and expectation that they will be purchased and used as designed by consumers in this District. Ford has offered and sells infringing vehicles and services in this District, including at physical stores located within this District.

23.     Ford has also directed communications in connection with negotiations with Plaintiffs into the Eastern District of Texas.

24.     Ford has committed acts of infringement in this judicial district and has regular and established places of business in this judicial district.

25.     On information and belief, Ford has regular and established places of business, at which it has committed acts of infringement and placed the accused products into the stream of commerce, throughout the State of Texas and in the Eastern District of Texas. On information and belief, Ford maintains its U.S. Central Market Area Office at 5700 Granite Parkway, Suite 1000, Plano, Texas 75024, which is located in this district. Exhibit 1 Ford describes this office as "the principal office of Ford in the State of Texas" where "the decision makers for [Ford] within this state conduct the daily affairs of the organization." *Ford Motor Co. v. Johnson*, 473 S.W.3d 925, 927 (Tex. App.—Dallas 2015, pet. denied). On information and belief, Ford has a number of employees that work at this location and in this district. For example, Tim Witt is the General Manager of Ford's Central Market Area Office and resides in Frisco, Texas, which is in this district. Mr. Witt explains that his job includes "Sales, Marketing, Fixed Operations responsibility for 750 Ford and Lincoln Dealers." Exhibit 2

26.     Ford also maintains regular and established places of business in this district through its authorized dealerships, including Marshall Ford located at 4200 East End Blvd. S. Marshall, Texas 75672.

27.     Ford also maintains regular and established places of business in this district through its authorized dealerships. Ford ratifies and holds these authorized Ford dealers out as the regular and established places of business of Ford in this District by listing each of them in Ford's sales directories and on Ford's website(s), including, e.g., as shown below:

**FIGURE 1**



28.     Ford further ratifies and holds these authorized Ford dealers out as the regular and established places of business of Ford in this District by requiring these authorized dealers to feature and use Ford's names, branding, trademarks, and/or trade dress, in each of these authorized dealers' names, including Marshall Ford, located at 4200 E. End Blvd. S., Marshall, Texas 75672, Tyler Ford located at 2626 S SW Loop 323, Tyler, Texas 75701, Lufkin Ford, 800 N Medford Dr, Lufkin, Texas 75901, as well as in the marketing and advertising materials that these authorized dealers use and make to offer for sale and sell the infringing automobiles and components in this District, such as on each authorized dealer's website hosted and shown to consumers in this District.

29.     Ford further ratifies and holds these authorized Ford dealers out as the regular and established places of business of Ford in this District by controlling in whole or in part the name, geographical location, layout, structure, marketing, branding, and overall look and feel of these exclusive places to test drive and purchase the infringing Ford automobiles and components, including, e.g., as shown below:

**FIGURE 2**



**FIGURE 3**



**FIGURE 4**



30.     Ford further ratifies and holds these authorized Ford dealers out as the regular and established places of business of Ford in this District by requiring these businesses to store, display, distribute, and/or offer for sale marketing materials, brochures, product specifications, service information, warranty information, financing information, and various other literature, as well as Ford service, parts, and accessories, for the infringing automobiles and components, including, e.g., as shown below:

**FIGURE 5**



31.     Ford further ratifies and holds these authorized Ford dealers out as the regular and established places of business of Ford in this District by establishing, authorizing, and requiring these places of business to offer to consumers in this District, at the time of sale and/or distribution of the infringing automobiles and components, Ford financial services and products, warranties, service from Ford certified and/or trained technicians, parts, and accessories.

32.     Ford further ratifies and holds these authorized Ford dealers out as the regular and established places of business of Ford in this District by establishing, authorizing and requiring consumers in this District to visit and use these authorized dealers in order to obtain authorized Ford service, obtain scheduled maintenance under any Ford Maintenance Plan, make repairs pursuant to any Ford warranty, or obtain any recall/campaign work for all new Ford vehicles and components, including those that infringe upon the Patents-in-Suit.

33.     Ford further ratifies and holds these authorized Ford dealers out as the regular and established places of business of Ford in this District by recruiting, hiring, training, offering compensation and benefits to, controlling, and/or labeling as authorized or certified Ford employees and agents some or all of the employees or agents employed in this District by these authorized dealers—including for example, Ford certified sales consultants, Ford certified technicians, and Ford certified service advisors.

34.     Ford has established and ratified and holds these authorized Ford dealers out as the regular and established places of business of Ford by directing and controlling these authorized dealers' actions, sales, and services in the foregoing manner, and has consented to these authorized dealers acting on Ford's behalf and being the exclusive places of business whereby the infringing automobiles and components are distributed, offered for sale, sold, and serviced in order to place these infringing articles into the stream of commerce in this District, and these authorized dealers

have consented to act on Ford's behalf pursuant to the foregoing terms of control and direction in order to be able to provide these Ford automobiles, components, and services to consumers in this District.

35.     Upon information and belief, each of these authorized Ford dealers in the District are regular, continuous, and established physical places of business of Defendant, being established, ratified, and/or controlled by Ford as authorized dealers, which are the exclusive places of business at which Ford offers for sale, sells, and provides authorized maintenance, warranty, and recall services for Ford vehicles and components that infringe upon the Patents-in-Suit.

36.     Upon Information and belief, Ford granted each of these authorized Ford dealers in this District the exclusive right to offer for sale, sell, and service the infringing Ford vehicles in this District, at these particular geographical locations, and has further conditioned these authorized dealers' continued offering for sale, sale, and service of the infringing Ford vehicles in this District on these authorized dealers' continued presences in this District, at these particular geographical locations, so that the infringing Ford automobiles and components are offered for sale, sold, and/or distributed in this District.

## IV.    DEVELOPMENT OF CELLULAR TECHNICAL SPECIFICATIONS BY 3GPP

37.     Cellular technologies developed and approved by 3rd Generation Partnership Project ("3GPP") has enabled companies, including Ford with no history in the wireless communication development, to sell products such as electrical vehicles equipped with integrated cellular connectivity.

38.     Originally established in 1998 to produce technical specifications and technical reports for a 3G mobile system, the scope of 3GPP has since expanded. For example, it has since taken on the responsibility of developing LTE (including LTE-Advanced and LTE-Advanced Pro)

and 5G cellular technologies. That is, "3GPP has become the focal point for the vast majority of mobile systems beyond 3G." (https://www.3gpp.org/about-3gpp).

39.     3GPP produces technical specifications that define cellular technologies. 3GPP has three technical specification groups: Radio Access Networks ("RAN"), Services & Systems Aspects ("SA"), and Core Networks & Terminals ("CT"). Each technical specification group has several working groups. The working groups meet regularly to discuss technical contributions by member companies, and come together for their quarterly technical specification group plenary meetings where agreements reached at the working group level are presented for information, discussion and approval at the technical specification group level. 3GPP technical specifications are contribution-driven by member companies in working groups and technical specification groups.

## V.     RELATIONSHIP BETWEEN ETSI AND 3GPP

40.     3GPP currently has seven telecommunication standard development organizations as organizational partners, one of which is The European Telecommunications Standards Institute or ETSI. Not all 3GPP members are ETSI members.

41.     ETSI is an independent, non-profit standard setting organization (SSO). In addition to being an organizational partner of 3GPP, ETSI has many of its own standard setting activities directed to the European region. ETSI needs to approve the technical specifications made by 3GPP to convert these technical specifications into a corresponding ETSI technical specification or standard.

42.     ETSI has developed and promulgated an IPR Policy. ETSI IPR Policy is to further "ETSI's objective to create STANDARDS and TECHNICAL SPECIFICATIONS that are based on solutions that best meet the technical objectives of the European telecommunication sector, as defined by the General Assembly." ETSI IPR Policy, § 3.1. To do so, ETSI IPR Policy "seeks to

11

reduce the risk to ETSI, MEMBERS, and others applying ETSI STANDARDS and TECHNICAL SPECIFICATIONS, that investment in the preparation, adoption and application of STANDARDS could be wasted as a result of an ESSENTIAL IPR for a STANDARD or TECHNICAL SPECIFICATION being unavailable" and "seeks a balance between the needs of standardization for public use in the field of telecommunications and the rights of the owners of IPRs." *Id*. One important objective of ETSI IPR Policy is to ensure that "IPR holders[,] whether members of ETSI and their AFFILIATES or third parties, [] be adequately and fairly rewarded for the use of their IPRs in the implementation of STANDARDS and TECHNICAL SPECIFICATIONS." *Id*., § 3.2.

43.     FRAND licensing declaration is a means by which ETSI IPR holders assure others that IPRs needed to implement ETSI standards and technical specifications are available and available on FRAND terms. ETSI has both a general IPR license declaration form and a more specific "IPR Information Statement and Licensing Declaration" form. *Id.*, § 6bis and Appendix.

## VI.     FORD'S USE OF THE PATENTED TECHNOLOGY

44.     As discussed above and further below, Ford has directly and indirectly infringed and continues to directly and indirectly infringe each of the Patents-in-Suit by importing/exporting into/from the United States, manufacturing, using, marketing, offering for sale, and/or selling in the United States, connected vehicles that communicate over the 4G/LTE cellular network standard that practices the technology covered by one or more claims of the Patents-in-Suit.

45.     The infringing Ford products include all Ford automobiles that are configured to communicate over the 4G/LTE cellular network, including without limitation all vehicles equipped with Sync Connect, FordPass Connect, or Lincoln Connect. On information and belief, such vehicles include, but are not limited to, certain Ford F-150 model vehicles; certain Ford Escape model vehicles; certain Ford Fusion model vehicles; certain Ford EcoSport model vehicles; certain Ford Edge model vehicles; certain Ford Expedition model vehicles; certain Ford Explorer model

vehicles; certain Ford Super Duty model vehicles; certain Ford Mustang model vehicles; certain Ford Transit model vehicles; certain Ford Ranger model vehicles; certain Ford Bronco model vehicles; certain Ford Bronco Sport model vehicles; certain Ford Maverick model vehicles; certain Ford C-Max model vehicles; certain Ford Fiesta model vehicles; certain Ford Flex model vehicles; certain Ford Taurus model vehicles; certain Ford commercial vehicles; certain Lincoln Aviator model vehicles; certain Lincoln Continental model vehicles; certain Lincoln Corsair model vehicles; certain Lincoln MKC model vehicles; certain Lincoln MKX model vehicles; certain Lincoln MKZ model vehicles; certain Lincoln Nautilus model vehicles; and certain Lincoln Navigator model vehicles.

46.     Collectively, the Ford vehicles listed above and any other similar model of motor vehicle made, sold, or imported in the United States by Ford that include LTE functionality will be known as the "Ford-Lincoln 4G/LTE Accused Products." On information and belief, these models include 3GPP LTE-practicing baseband processors, RF transceivers, antennas, CPU, RF power amplifiers, and other software and hardware to provide cellular communications. Specifically, all of these components combine together to enable the Ford vehicles, Ford, and the users of those vehicles to conduct LTE communications by practicing the 3GPP LTE standards.

47.     Ford advertises, and it is widely publicized, that Ford-Lincoln 4G/LTE Accused Products are capable of communicating via cellular network in a manner that practices the 4G/LTE cellular network standards. For example, the brochures for nearly all of Ford's 2021 vehicles state that the vehicle includes "FordPass Connect with 4G LTE WiFi" as a feature. *See, e.g.*, https://www.ford.com/aemservices/brand/api/nameplate/brochure?region=US&make=Ford&model=F-150&year=2021.

48.     As another example, Ford dedicates a webpage on the Ford site to the features and use of "FordPass Connect" which allows you "[t]urn your vehicle into a Wi-Fi hotspot . . for up to 10 Wi-Fi capable devices" via 4G LTE networks. *See* https://www.ford.com/support/how-tos/fordpass/fordpass-connect/fordpass-connect-overview/.

49.     Ford provides instruction manuals that instruct the users of the Ford-Lincoln 4G/LTE Accused Products to use the Ford-Lincoln 4G/LTE Accused Products in a manner that infringes the Patents-in-Suit. For example, Ford instructs users how to use the cellular features on its website and in the manuals for the Ford-Lincoln 4G/LTE Accused Products. *See* https://www.fordservicecontent.com/Ford_Content/vdirsnet/OwnerManual/Home/Index?Variantid=8665&languageCode=EN&countryCode=USA&VIN=&userMarket=usa&div=f.  As another example, Ford advertises its FordPass mobile applications on its web site and instructs its customers on its usage. *See* https://www.ford.com/support/category/fordpass/fordpass-connect-wifi-hotspot/. As an additional example, Ford and Lincoln have each posted videos on YouTube that direct and instruct users on the setup and use of the Ford-Lincoln 4G/LTE Accused Products. *See* https://www.youtube.com/watch?v=mJRKIwJRptA and https://www.youtube.com/watch?v=vbRHlMHSdqs.

**FIGURE 6**



50.     On information and belief, Ford tests the cellular functionality of each of the Ford-Lincoln 4G/LTE Accused Products in the United States and thereby directly performs the claimed method and/or uses the claimed apparatus, thus infringing the Patents-in-Suit.

51.     Ford has further directly and indirectly infringed and continues to directly and indirectly infringe each of the Patents-in-Suit through its provisioning and using of its services and mobile applications ("the Accused Services"). Such services include, but are not limited to, provisioning of cellular connectivity, remote diagnosis, provisioning of important updates over cellular networks, provisioning of the FordPass Connect Application, enabling customers' monitoring and controlling of vehicles over cellular networks, sending notifications for selected events (such as vehicle charging status) and enabling customers to receive notifications, which can be and are often transmitted over cellular networks.

52.     Ford's acts of infringement have caused damage to Plaintiffs. Plaintiffs are entitled to recover from Ford the damages sustained by Plaintiffs as a result of Ford's wrongful acts in an amount subject to proof at trial.

53.     Ford's infringement of the Patents-in-Suit is willful. Ford continues to commit acts of infringement despite a high likelihood that its actions constitute infringement, and Ford knew or should have known that its actions constituted an unjustifiably high risk of infringement.

## VII.   PLAINTIFFS' ATTEMPTS TO LICENSE FORD ON FRAND TERMS AND FORD'S KNOWLEDGE OF THE PATENTS-IN-SUIT

54.     Ford requires a license to cellular essential patents owned by Plaintiffs. Plaintiffs, in conformance with ETSI's IPR Policy, have informed Ford that they are prepared to grant Ford a license to their standard essential patents, including the Patents-in-Suit, on terms that are Fair, Reasonable, and Non-Discriminatory ("FRAND"). In addition, Plaintiffs have authorized Avanci to grant Ford a license to their patents on FRAND terms, and upon information and belief, Avanci

has made considerable efforts over multiple years to do so.  However, Ford has to date refused to take a license to Plaintiffs' patents.

55.     For several years, beginning no later than April 24, 2017, Plaintiffs have attempted to offer Ford a license to Plaintiffs' cellular essential patents, including the Patents-in-Suit, on FRAND terms.

56.     Plaintiffs have also sought to have Ford take a license to its patents on FRAND terms as part of a broader pool of essential cellular patents through Avanci. On information and belief, starting in August 2017, Avanci has made extensive efforts to have Ford take a license on FRAND terms.

57.     Although Ford is selling the infringing vehicles with cellular functionality, Ford has to date not taken a license. In contrast to Ford, several other automobile manufacturers have taken a license.

58.     Ford has been operating and continues to operate without a license to Plaintiffs' essential patents, including the Patents-in-Suit. Given Ford's unwillingness to license Plaintiffs' essential patents, or to cease its infringement, Plaintiffs have filed this lawsuit for the purpose of protecting their patent rights in the United States.

59.     In addition to having actual notice of the Patents-in-Suit as a result of the pre-suit negotiations described above, Ford has had actual notice and knowledge of all of the Patents-in-Suit no later than the filing of this Complaint and/or the date this Complaint was served upon Ford. Ford continues without license to make, use, import/export into/from, market, offer for sale, and/or sell in the United States products and services that infringe the Patents-in-Suit. Despite knowledge of the patents, Ford continues without license to contribute to the infringement of others and to actively induce others to infringe the Patents-in-Suit. For example, Ford controls mobile

applications that allows Ford customers to request that Ford send information on the customer's Ford vehicle and/or cause the Ford vehicle to take certain acts. As yet another example, Ford markets connectivity packages that allows for customers to use mobile hot-spots within their vehicles.

COUNT ONE: PATENT INFRINGEMENT OF THE '727 PATENT[1]

60.     Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

61.     The '727 patent is entitled "Radio Transmission Apparatus, and Radio Transmission Method." The '727 patent was duly and legally issued on April 3, 2012. Plaintiff Optis Wireless owns all rights, title and interest in the '727 patent necessary to bring this action, including the right to recover past and future damages. A true and correct copy of the '727 patent is attached hereto as Exhibit 3.

62.     The '727 patent is essential under the 3GPP LTE standards as explained by way of exemplary claims in attached Exhibit 4. Thus, the Ford-Lincoln 4G/LTE Accused Products and Services that comply with the 3GPP LTE standards practice the '727 patent.

63.     Ford infringes, contributes to the infringement of, and/or induces infringement of the '727 patent by making, using, selling, offering for sale, exporting from, and/or importing into the United States products, services and/or methods covered by one or more claims of the '727 patent including, but not limited to, at least the Ford-Lincoln 4G/LTE Accused Products and Accused Services.

---

[1]In the interest of providing detailed averments of infringement, Plaintiffs have identified at least one claim per patent to demonstrate infringement. However, the selection of claims should not be considered limiting, and additional claims of the Patents-in-Suit that are infringed by Ford will be disclosed in compliance with the Court's rules related to infringement contentions.

64.     Thus, as just illustrated in Exhibit 4, the Ford-Lincoln 4G/LTE Accused Products and Services directly infringe one or more claims of the '727 patent. Ford makes, uses, sells, offers for sale, exports, and/or imports, in this District and/or elsewhere in the United States, these vehicles that are compatible with the 4G/LTE standard and thus directly infringes the '727 patent. Ford also uses, distributes, sells, offers for sale in this District and/or elsewhere in the United States, services that utilize the 4G/LTE standard and thus directly and/or indirectly infringes the '727 patent.  Ford thus directly infringes the '727 patent, as provided in 35 U.S.C. § 271(a).

65.     Ford was made aware of the '727 patent and its infringement no later than April 24, 2017, when Plaintiffs offered to begin FRAND negotiations with Ford regarding the 3GPP standard essential patents.

66.     Ford has had knowledge and notice of the '727 patent and its infringement also by way of the filing of the Complaint.

67.     Ford indirectly infringes the '727 patent, as provided in 35 U.S.C. § 271(b), by inter alia, and with specific intent or willful blindness, actively aiding and abetting infringement by others, such as Ford's partners, customers and end-users, in this District and elsewhere in the United States. For example, Ford's partners, customers and end-users directly infringe through their use of the inventions claimed in the '727 patent. Ford induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Ford-Lincoln 4G/LTE Accused Products and Services, and providing instructions, documentation, mobile applications and other information to customers and end-users suggesting they use the Ford-Lincoln 4G/LTE Accused Products and Services in an infringing manner, including in-store or on-site technical support and services, support at customer sites, online technical support, training, marketing, product manuals, advertisements, and online documentation. As a result of

Ford's inducement, Ford's partners, customers, and end-users use the Ford-Lincoln 4G/LTE Accused Products and Services in the way Ford intends and directly infringe the '727 patent. Ford performs these affirmative acts with knowledge of the '727 patent and with the intent, or willful blindness, that the induced acts directly infringe the '727 patent.

68.     Ford also indirectly infringes the '727 patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States. Ford's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Ford-Lincoln 4G/LTE Accused Products and causing the Ford-Lincoln 4G/LTE Accused Products to be manufactured, used, sold, and offered for sale contribute to Ford's customers and end-users use of the Ford-Lincoln 4G/LTE Accused Products, such that the '727 patent is directly infringed. The 3GPP LTE-practicing systems in the Ford-Lincoln 4G/LTE Accused Products and Services are material to the invention of the '727 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Ford to be especially made or adapted for use in the infringement of the '727 patent. Ford performs these affirmative acts with knowledge of the '727 patent and with intent, or willful blindness, that they cause the direct infringement of the '727 patent.

69.     Ford's infringement of the '727 patent has damaged and will continue to damage Plaintiffs.

**COUNT TWO: PATENT INFRINGEMENT OF THE '792 PATENT**

70.     Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

71.     The '792 patent is entitled "Radio Communication Apparatus and Response Signal Spreading Method." The '792 patent was duly and legally issued on June 12, 2012. Plaintiff Optis Wireless owns all rights, title and interest in the '792 patent necessary to bring this action,

including the right to recover past and future damages. A true and correct copy of the '792 patent is attached hereto as Exhibit 5.

72.     The '792 patent is essential under the 3GPP LTE standards as explained by way of exemplary claims in attached Exhibit 6. Thus, the Ford-Lincoln 4G/LTE Accused Products and Services that comply with the 3GPP LTE standards practice the '792 patent.

73.     Ford infringes, contributes to the infringement of, and/or induces infringement of the '792 patent by making, using, selling, offering for sale, exporting from, and/or importing into the United States products, services and/or methods covered by one or more claims of the '792 patent including, but not limited to, at least the Ford-Lincoln 4G/LTE Accused Products and Accused Services.

74.     Thus, as just illustrated in Exhibit 6, the Ford-Lincoln 4G/LTE Accused Products and Services directly infringe one or more claims of the '792 patent. Ford makes, uses, sells, offers for sale, exports, and/or imports, in this District and/or elsewhere in the United States, these vehicles that are compatible with the 4G/LTE standard and thus directly infringes the '792 patent. Ford also uses, distributes, sells, offers for sale in this District and/or elsewhere in the United States, services that utilize the 4G/LTE standard and thus directly and/or indirectly infringes the '792 patent.  Ford thus directly infringes the '792 patent, as provided in 35 U.S.C. § 271(a).

75.     Ford was made aware of the '792 patent and its infringement no later than April 24, 2017 when Plaintiffs offered to begin FRAND negotiations with Ford regarding the 3GPP standard essential patents.

76.     Ford has had knowledge and notice of the '792 patent and its infringement also by way of the filing of the Complaint.

77.     Ford indirectly infringes the '792 patent, as provided in 35 U.S.C. § 271(b), by inter alia, and with specific intent or willful blindness, actively aiding and abetting infringement by others, such as Ford's partners, customers and end-users, in this District and elsewhere in the United States. For example, Ford's partners, customers and end-users directly infringe through their use of the inventions claimed in the '792 patent. Ford induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Ford-Lincoln 4G/LTE Accused Products and Services, and providing instructions, documentation, mobile applications and other information to customers and end-users suggesting they use the Ford-Lincoln 4G/LTE Accused Products and Services in an infringing manner, including in-store or on-site technical support and services, support at customer sites, online technical support, training, marketing, product manuals, advertisements, and online documentation. As a result of Ford's inducement, Ford's partners, customers, and end-users use the Ford-Lincoln 4G/LTE Accused Products and Services in the way Ford intends and directly infringe the '792 patent. Ford performs these affirmative acts with knowledge of the '792 patent and with the intent, or willful blindness, that the induced acts directly infringe the '792 patent.

78.     Ford also indirectly infringes the '792 patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States. Ford's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Ford-Lincoln 4G/LTE Accused Products and causing the Ford-Lincoln 4G/LTE Accused Products to be manufactured, used, sold, and offered for sale contribute to Ford's customers and end-users use of the Ford-Lincoln 4G/LTE Accused Products, such that the '792 patent is directly infringed. The 3GPP LTE-practicing systems in the Ford-Lincoln 4G/LTE Accused Products and Services are material to the invention

of the '792 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Ford to be especially made or adapted for use in the infringement of the '792 patent. Ford performs these affirmative acts with knowledge of the '792 patent and with intent, or willful blindness, that they cause the direct infringement of the '792 patent.

79.     Ford's infringement of the '792 patent has damaged and will continue to damage Plaintiffs.

**COUNT THREE: PATENT INFRINGEMENT OF THE '863 PATENT**

80.     Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

81.     The '863 patent is entitled "Method and Arrangement in a Cellular Communications System." The '863 patent was duly and legally issued on July 17, 2012. Plaintiff Optis Wireless owns all rights, title and interest in the '863 patent necessary to bring this action, including the right to recover past and future damages. A true and correct copy of the '863 patent is attached hereto as Exhibit 7.

82.     The '863 patent is essential under the 3GPP LTE standards as explained by way of exemplary claims in attached Exhibit 8. Thus, the Ford-Lincoln 4G/LTE Accused Products and Services that comply with the 3GPP LTE standards practice the '863 patent.

83.     Ford infringes, contributes to the infringement of, and/or induces infringement of the '863 patent by making, using, selling, offering for sale, exporting from, and/or importing into the United States products, services and/or methods covered by one or more claims of the '863 patent including, but not limited to, at least the Ford-Lincoln 4G/LTE Accused Products and Accused Services.

84.     Thus, as just illustrated in Exhibit 8, the Ford-Lincoln 4G/LTE Accused Products and Services directly infringe one or more claims of the '863 patent. Ford makes, uses, sells, offers

for sale, exports, and/or imports, in this District and/or elsewhere in the United States, these vehicles that are compatible with the 4G/LTE standard and thus directly infringes the '863 patent. Ford also uses, distributes, sells, offers for sale in this District and/or elsewhere in the United States, services that utilize the 4G/LTE standard and thus directly and/or indirectly infringes the '863 patent.  Ford thus directly infringes the '863 patent, as provided in 35 U.S.C. § 271(a).

85.     Ford was made aware of the '863 patent and its infringement no later than April 24, 2017 when Plaintiffs offered to begin FRAND negotiations with Ford regarding the 3GPP standard essential patents.

86.     Ford has had knowledge and notice of the '863 patent and its infringement also by way of the filing of the Complaint.

87.     Ford indirectly infringes the '863 patent, as provided in 35 U.S.C. § 271(b), by inter alia, and with specific intent or willful blindness, actively aiding and abetting infringement by others, such as Ford's partners, customers and end-users, in this District and elsewhere in the United States. For example, Ford's partners, customers and end-users directly infringe through their use of the inventions claimed in the '863 patent. Ford induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Ford-Lincoln 4G/LTE Accused Products and Services, and providing instructions, documentation, mobile applications and other information to customers and end-users suggesting they use the Ford-Lincoln 4G/LTE Accused Products and Services in an infringing manner, including in-store or on-site technical support and services, support at customer sites, online technical support, training, marketing, product manuals, advertisements, and online documentation. As a result of Ford's inducement, Ford's partners, customers, and end-users use the Ford-Lincoln 4G/LTE Accused Products and Services in the way Ford intends and directly infringe the '863 patent. Ford

performs these affirmative acts with knowledge of the '863 patent and with the intent, or willful blindness, that the induced acts directly infringe the '863 patent.

88.     Ford also indirectly infringes the '863 patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States. Ford's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Ford-Lincoln 4G/LTE Accused Products and causing the Ford-Lincoln 4G/LTE Accused Products to be manufactured, used, sold, and offered for sale contribute to Ford's customers and end-users use of the Ford-Lincoln 4G/LTE Accused Products, such that the '863 patent is directly infringed. The 3GPP LTE-practicing systems in the Ford-Lincoln 4G/LTE Accused Products and Services are material to the invention of the '863 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Ford to be especially made or adapted for use in the infringement of the '863 patent. Ford performs these affirmative acts with knowledge of the '863 patent and with intent, or willful blindness, that they cause the direct infringement of the '863 patent.

89.     Ford's infringement of the '863 patent has damaged and will continue to damage Plaintiffs.

### COUNT FOUR: PATENT INFRINGEMENT OF THE '335 PATENT

90.     Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

91.     The '335 patent is entitled "Radio Communication Apparatus and Radio Communication Method." The '335 patent was duly and legally issued on August 28, 2012. Plaintiff Optis Wireless owns all rights, title and interest in the '335 patent necessary to bring this action, including the right to recover past and future damages. A true and correct copy of the '335 patent is attached hereto as Exhibit 9.

92.     The '335 patent is essential under the 3GPP LTE standards as explained by way of exemplary claims in attached Exhibit 10. Thus, the Ford-Lincoln 4G/LTE Accused Products and Services that comply with the 3GPP LTE standards practice the '335 patent.

93.     Ford infringes, contributes to the infringement of, and/or induces infringement of the '335 patent by making, using, selling, offering for sale, exporting from, and/or importing into the United States products, services and/or methods covered by one or more claims of the '335 patent including, but not limited to, at least the Ford-Lincoln 4G/LTE Accused Products and Accused Services.

94.     Thus, as just illustrated in Exhibit 10, the Ford-Lincoln 4G/LTE Accused Products and Services directly infringe one or more claims of the '335 patent. Ford makes, uses, sells, offers for sale, exports, and/or imports, in this District and/or elsewhere in the United States, these vehicles that are compatible with the 4G/LTE standard and thus directly infringes the '335 patent. Ford also uses, distributes, sells, offers for sale in this District and/or elsewhere in the United States, services that utilize the 4G/LTE standard and thus directly and/or indirectly infringes the '335 patent.  Ford thus directly infringes the '335 patent, as provided in 35 U.S.C. § 271(a).

95.     Ford was made aware of the '335 patent and its infringement no later than April 24, 2017 when Plaintiffs offered to begin FRAND negotiations with Ford regarding the 3GPP standard essential patents.

96.     Ford has had knowledge and notice of the '335 patent and its infringement also by way of the filing of the Complaint.

97.     Ford indirectly infringes the '335 patent, as provided in 35 U.S.C. § 271(b), by inter alia, and with specific intent or willful blindness, actively aiding and abetting infringement by others, such as Ford's partners, customers and end-users, in this District and elsewhere in the

United States. For example, Ford's partners, customers and end-users directly infringe through their use of the inventions claimed in the '335 patent. Ford induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Ford-Lincoln 4G/LTE Accused Products and Services, and providing instructions, documentation, mobile applications and other information to customers and end-users suggesting they use the Ford-Lincoln 4G/LTE Accused Products and Services in an infringing manner, including in-store or on-site technical support and services, support at customer sites, online technical support, training, marketing, product manuals, advertisements, and online documentation. As a result of Ford's inducement, Ford's partners, customers, and end-users use the Ford-Lincoln 4G/LTE Accused Products and Services in the way Ford intends and directly infringe the '335 patent. Ford performs these affirmative acts with knowledge of the '335 patent and with the intent, or willful blindness, that the induced acts directly infringe the '335 patent.

98.     Ford also indirectly infringes the '335 patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States. Ford's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Ford-Lincoln 4G/LTE Accused Products and causing the Ford-Lincoln 4G/LTE Accused Products to be manufactured, used, sold, and offered for sale contribute to Ford's customers and end-users use of the Ford-Lincoln 4G/LTE Accused Products, such that the '335 patent is directly infringed. The 3GPP LTE-practicing systems in the Ford-Lincoln 4G/LTE Accused Products and Services are material to the invention of the '335 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Ford to be especially made or adapted for use in the infringement

of the '335 patent. Ford performs these affirmative acts with knowledge of the '335 patent and with intent, or willful blindness, that they cause the direct infringement of the '335 patent.

99.     Ford's infringement of the '335 patent has damaged and will continue to damage Plaintiffs.

## COUNT FIVE: PATENT INFRINGEMENT OF THE '319 PATENT

100.    Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

101.    The '319 patent is entitled "Semi-Persistent Scheduled Resource Release Procedure in a Mobile Communication Network." The '319 patent was duly and legally issued on November 27, 2012. Plaintiff Optis Wireless owns all rights, title and interest in the '319 patent necessary to bring this action, including the right to recover past and future damages. A true and correct copy of the '319 patent is attached hereto as Exhibit 11.

102.    The '319 patent is essential under the 3GPP LTE standards as explained by way of exemplary claims in attached Exhibit 12. Thus, the Ford-Lincoln 4G/LTE Accused Products and Services that comply with the 3GPP LTE standards practice the '319 patent.

103.    Ford infringes, contributes to the infringement of, and/or induces infringement of the '319 patent by making, using, selling, offering for sale, exporting from, and/or importing into the United States products, services and/or methods covered by one or more claims of the '319 patent including, but not limited to, at least the Ford-Lincoln 4G/LTE Accused Products and Accused Services.

104.    Thus, as just illustrated in Exhibit 12, the Ford-Lincoln 4G/LTE Accused Products and Services directly infringe one or more claims of the '319 patent. Ford makes, uses, sells, offers for sale, exports, and/or imports, in this District and/or elsewhere in the United States, these vehicles that are compatible with the 4G/LTE standard and thus directly infringes the '319 patent.

Ford also uses, distributes, sells, offers for sale in this District and/or elsewhere in the United States, services that utilize the 4G/LTE standard and thus directly and/or indirectly infringes the '319 patent.  Ford thus directly infringes the '319 patent, as provided in 35 U.S.C. § 271(a).

105.    Ford was made aware of the '319 patent and its infringement no later than April 24, 2017 when Plaintiffs offered to begin FRAND negotiations with Ford regarding the 3GPP standard essential patents.

106.    Ford has had knowledge and notice of the '319 patent and its infringement also by way of the filing of the Complaint.

107.    Ford indirectly infringes the '319 patent, as provided in 35 U.S.C. § 271(b), by inter alia, and with specific intent or willful blindness, actively aiding and abetting infringement by others, such as Ford's partners, customers and end-users, in this District and elsewhere in the United States. For example, Ford's partners, customers and end-users directly infringe through their use of the inventions claimed in the '319 patent. Ford induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Ford-Lincoln 4G/LTE Accused Products and Services, and providing instructions, documentation, mobile applications and other information to customers and end-users suggesting they use the Ford-Lincoln 4G/LTE Accused Products and Services in an infringing manner, including in-store or on-site technical support and services, support at customer sites, online technical support, training, marketing, product manuals, advertisements, and online documentation. As a result of Ford's inducement, Ford's partners, customers, and end-users use the Ford-Lincoln 4G/LTE Accused Products and Services in the way Ford intends and directly infringe the '319 patent. Ford performs these affirmative acts with knowledge of the '319 patent and with the intent, or willful blindness, that the induced acts directly infringe the '319 patent.

108.    Ford also indirectly infringes the '319 patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States. Ford's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Ford-Lincoln 4G/LTE Accused Products and causing the Ford-Lincoln 4G/LTE Accused Products to be manufactured, used, sold, and offered for sale contribute to Ford's customers and end-users use of the Ford-Lincoln 4G/LTE Accused Products, such that the '319 patent is directly infringed. The 3GPP LTE-practicing systems in the Ford-Lincoln 4G/LTE Accused Products and Services are material to the invention of the '319 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Ford to be especially made or adapted for use in the infringement of the '319 patent. Ford performs these affirmative acts with knowledge of the '319 patent and with intent, or willful blindness, that they cause the direct infringement of the '319 patent.

109.    Ford's infringement of the '319 patent has damaged and will continue to damage Plaintiffs.

**COUNT SIX: DECLARATORY JUDGMENT THAT PLAINTIFFS HAVE COMPLIED WITH THEIR FRAND OBLIGATIONS**

110.    Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

111.    Plaintiffs own patents essential to various standards, including for example, 4G/LTE. Ford infringes Plaintiffs' essential patents and does not have a license to practice such patents.

112.    The original assignees of Plaintiffs' standard essential patents voluntarily declared that they are prepared to grant licenses on terms that are fair, reasonable, and non-discriminatory

("FRAND"), in compliance with the ETSI IPR Policy. Plaintiffs have reaffirmed the declarations. These declarations formed a contract ("FRAND contract") under French law.

113.    Plaintiffs have fully performed their obligations under the FRAND contract, whereas Ford has refused to take a FRAND license to Plaintiffs' patents.

114.    On information and belief, there is a dispute between the parties concerning whether the negotiations with and offers to license extended to Ford have been FRAND in compliance with the ETSI IPR Policy.

115.    Accordingly, there is a case or controversy of sufficient immediacy, reality, and ripeness to warrant the issuance of declaratory judgment

116.    Plaintiffs therefore request a declaratory judgment in this Court that its negotiations toward a FRAND license with Ford, both directly and via Avanci, have complied with the FRAND commitment.

## VIII.   DAMAGES

117.    As a result of Ford's acts of infringement, Plaintiffs have suffered actual and consequential damages. To the fullest extent permitted by law, Plaintiffs seek recovery of damages at least in the form of reasonable royalties.

## IX.   DEMAND FOR JURY TRIAL

118.    Plaintiffs hereby demand a jury trial for all issues so triable.

## X.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor ordering, finding, declaring, and/or awarding Plaintiffs relief as follows:

A.    that Ford infringes the Patents-in-Suit;

B.    that Ford's infringement of the Patents-in-Suit is willful;

C.      Plaintiffs' actual damages in an amount sufficient to compensate Plaintiffs for

Ford's infringement of the Patents-in-Suit until such time as Ford ceases

infringing conduct, including supplemental damages post-verdict;

D.      enhanced damages pursuant to 35 U.S.C. § 284;

E.      pre-judgment and post-judgment interest to the full extent allowed under the law,

as well as their costs;

F.      that Plaintiffs have complied with their FRAND obligations under the ETSI IPR

Policy;

G.      that this is an exceptional case and awarding Plaintiffs their reasonable attorneys'

fees pursuant to 35 U.S.C. § 285;

H.      an accounting for acts of infringement; and

I.      such other equitable relief which may be requested and to which Plaintiffs are

entitled.

DATED:      May 4, 2022                    Respectfully submitted,

                                           */s/ Steven J. Pollinger*
                                           Steven J. Pollinger
                                           Texas State Bar No. 24011919
                                           spollinger@McKoolSmith.com
                                           **MCKOOL SMITH, P.C.**
                                           303 Colorado Street, Suite 2100
                                           Austin, Texas 78701
                                           Telephone: (512) 692-8700
                                           Facsimile: (512) 692-8744

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@McKoolSmith.com
Jennifer Truelove
Texas State Bar No. 24012906
jtruelove@McKoolSmith.com
**MCKOOL SMITH, P.C.**
104 E. Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Ryan B. McBeth
Texas State Bar No. 24078955
rmcbeth@mckoolsmith.com
**MCKOOL SMITH, P.C.**
600 Travis Street, Suite 7000
Houston, Texas 77002
Telephone: (713) 485-7300
Facsimile: (713) 485-7344

Garrett C. Parish
Texas State Bar No. 24125824
gparish@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

**ATTORNEYS FOR PLAINTIFFS
OPTIS WIRELESS TECHNOLOGY, LLC,
OPTIS CELLULAR TECHNOLOGY, LLC,
UNWIRED PLANET, LLC, UNWIRED
PLANET INTERNATIONAL LIMITED, AND
PANOPTIS PATENT MANAGEMENT, LLC**